IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

```
RONALD G. JOHNSON,                    :
                                      :
          Plaintiff,                  :
                                      :
     v.                               : Civ. Action No. 08-479-JJF
                                      :
6 UNIDENTIFIED CITY OF                :
WILMINGTON POLICE OFFICERS,           :
CITY OF WILMINGTON POLICE             :
DEPARTMENT, UNIDENTIFIED              :
DETECTIVE, OFFICER DONOHUE,           :
SERGEANT TAYLOR, and                  :
LIEUTENANT CIOTTI,                    :
                                      :
          Defendants.                 :
```

Ronald G. Johnson, Pro se Plaintiff, Wilmington, Delaware.

Andrea J. Faraone Rhen, Esquire, City of Wilmington Law
Department, Wilmington.  Attorney for Defendants.

**MEMORANDUM OPINION**

April $\overline{\partial I}$, 2010
Wilmington, Delaware

**Farnan  District Judge**

Plaintiff Ronald G. Johnson ("Plaintiff"), a former inmate
at the Howard R. Young Correctional Institution ("HRYCI"),
Wilmington, Delaware, filed this lawsuit pursuant to 42 U.S.C. §§
1983, 1985, and 1986.  He proceeds pro se and has been granted
leave to proceed in forma pauperis.  The Court has jurisdiction
pursuant to 28 U.S.C. § 1331.  Presently before the Court are
Defendants' Motion For Summary Judgment and Plaintiff's Request
For Counsel.[1]  (D.I. 33, 36.)  For the reasons discussed below,
the Court will grant Defendants' Motion For Summary Judgment and
will deny Plaintiff's Request For Counsel.

## I.  BACKGROUND

The following facts are taken from the Complaint and other
documents and exhibits submitted by the parties.  The Complaint
alleges that on July 10, 2008, Plaintiff, who was at his home,
was the victim of an unlawful search and seizure, threatened,
ordered to provide identification, and arrested on an outstanding
warrant.  Plaintiff alleges that he was unable to arrange for
bail because of the untimely arrest.  He claims mental suffering

---

[1]To date, Plaintiff has identified and served three of the
"6 Unidentified City of Wilmington Police Officers" and
"Unidentified Detective" Defendants.

1

and loss of property for the time he spent at the HRYCI. (D.I. 2.)

Plaintiff's claims stem from the events of July 10, 2008, when Wilmington police officers, including Defendants Sergeant George Taylor ("Taylor"), Lieutenant Gregory J. Ciotti ("Ciotti"), and Corporal Kimberly A. Donohue ("Donohue"), arrived at 1107 Columbia Avenue, Wilmington, Delaware, after receiving telephone calls reporting that someone there had been shot. (D.I. 35, A65, 90, 69, 75, 79, 82, 87.) Upon their arrival, police found the shooting victim sitting on a couch on the outside front porch, near the entrance to the residence. (Id. at A75, 90-91, 95.) The shooting victim sustained injuries to the right chest area and right back shoulder blade area. (Id. at A75, 91.) The police officers saw a trail of blood leading from the porch, through the doorway to the residence, into the house, and back onto the porch. (Id. at A65, 91.) Taylor and Ciotti concluded that the shooting victim had been inside the house and that the shooting had most likely occurred there. (Id. at A65-66, 70.) The blood trail and the presence of the victim at the house indicated to Defendants that the shooting suspect, weapons, and other victims were likely at the house. (Id.)

The shooting victim was questioned by Wilmington police officers Devon Jones ("Jones") and Angela Kyelberg ("Kyelberg")

2

regarding the place of the shooting.[2]  (Id. at A75, 82, 90-91,
95.)  They were speaking to the victim when Donohue arrived at
the scene.  (Id. at A90.)  The victim was initially
uncooperative, and provided unclear, inconsistent, and evasive
answers.  (Id. at A-91.)  Later, the victim told Jones and
Kyelberg that the shooting had taken place somewhere on Franklin
Street.  (Id. at A75, 91.)  Paramedics arrived, and Jones
accompanied the victim to the hospital while Kyelberg remained at
the house to aid in gathering information regarding the shooting.
(Id. at A75, 82.)

     Taylor and two other police officers conducted a limited
search of the house.[3]  (Id. A66, 70, 83.)  According to Taylor,
the officers walked through each room, and looked in areas that
were in plain view and in closets where persons or bodies of
victims could be found.  (Id. at A70-71.)  Taylor, Ciotti, and
the other officers did not speak with the shooting victim prior
to the search because he was receiving medical assistance when
they arrived.  (Id. at A65, 71.)  Defendants did not become aware
that the shooting had occurred elsewhere until after Taylor and
other officers had completed a cursory search of the house.  (Id.
at A66-67, 71.)

---

[2]Jones and Kyelberg are not named defendants.

[3]Ciotti and Donohue did not participate in the search.

3

Plaintiff alleges that he personally advised Taylor the shooting had not occurred at the house. (D.I. 2; D.I. 35, A14.) According to Taylor, he did not speak with Plaintiff until after the house was searched and, when they did speak, Plaintiff appeared intoxicated and behaved in a disorderly manner. (Id. at A4, 71.) Taylor states that he was not informed by Plaintiff that the shooting did not happen at the Columbia Avenue house, and even if he had been told that, a limited search would have been necessary to ensure the safety of the officers and other persons present. (Id. at A67, 71.) The investigation ultimately revealed that the shooting occurred at the intersection of Chestnut and Franklin Streets. (Id. at A66-67, 71,89.)

A police officer's specialized training and experience in law enforcement indicates that victims and witnesses sometimes provide false information regarding a crime's location. (Id. at A67, 71.) According to Ciotti, because the occupants of the house were considered suspects in the shooting, they had a motive to lie to the police. (Id. at A67, 71-72.) The intersection of Chestnut and Franklin Streets is located approximately twelve blocks from the Columbia Avenue house, and Ciotti believed that it was extremely unlikely that the victim could have walked that far with a serious gunshot wound to the chest. (Id. at A67.) Also, the trail of blood indicated to Defendants that the crime

4

had occurred inside the Columbia Avenue house. (Id. at A67-68, 91.)

Due to the nature of the crime and the belief that the shooting suspect was potentially present and armed, the police officers on the scene, who were armed, may have had their weapons drawn or, at times, had their hands on their weapons. (Id. at A66.) While investigating the shooting, the police officers attempted to gather the occupants into the first floor living room, and asked them to sit and keep their conversation to a minimum. (Id. at A66, 71, 91.) All occupants were regarded as potential suspects and witnesses to the shooting and were gathered to protect the safety of the police officers and others present as well as to gather information relevant to the investigation. (Id. at A66, 71-72, 91.)

The police officers asked the occupants for identification, verified their identification, and ran a check for outstanding capiases or arrest warrants. (Id. at A66, 91.) This is done as a precautionary measure at all major crime scenes to determine whether there is a flight risk for any potential suspects and witnesses. (Id.) Donohue conducted a "wanted check" on Plaintiff and it revealed an active warrant and outstanding

capias for his arrest.[4]  (Id. at A91-92,95.)  Donohue confirmed
the validity of the active arrest warrant, and arrested
Plaintiff.[5]  (Id.)

## II.  SUMMARY JUDGMENT

### A.  Standard

Summary judgment is appropriate "if the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  The moving party bears the burden of
proving that no genuine issue of material fact exists.  See
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
586 n.10 (1986).  The facts must be viewed in the light most
favorable to the non-moving party and all reasonable inferences
from the evidence must be drawn in that parties' favor.  Conopco,
Inc. v. United States, 572 F.3d 162, 165 (3d Cir. 2009).  A
genuine issue of material fact exists "if the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

---

[4]At the time, Plaintiff was sitting on the floor in the
living room, appeared intoxicated and acted disorderly.  (Id. at
A91-92, 95.)

[5]Plaintiff's answers to Defendants' interrogatories states
that the outstanding warrant and capias were valid at the time of
his arrest.  (D.I. 31, Resp. Nos. 13 and 23; D.I. 35, A59-61.)

6

(1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

A party opposing a summary judgment motion must respond with affidavits or depositions setting forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party "cannot simply reassert factually unsupported allegations contained in his pleadings." Williams v. West Chester, 891 F.2d 458, 460 (3d Cir. 1989). If the non-moving party does not file a response, the Court will not grant the entry of summary judgment without considering the merits of a defendant's unopposed motion. Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991) (holding that a district court should not have granted summary judgment solely on the basis that a motion for summary judgment was not opposed.").

Defendants move for summary judgment on the grounds that Plaintiff cannot demonstrate that he was deprived of any constitutional right, he cannot satisfy his burden of proving proximate cause, the individual defendants are entitled to qualified immunity, Plaintiff lacks standing to raise claims on

behalf of other occupants of the premises, Plaintiff has failed

to meet the requirements to establish municipal liability

pursuant to 42 U.S.C. § 1983, and the Wilmington Police

Department is not a separate juridical entity from the City of

Wilmington, Delaware. (D.I. 33, 34.) Plaintiff did not respond

to the Motion.

## B.  Discussion

### 1.  Standing

Defendants move for summary judgment on the claims Plaintiff

asserts on behalf of other occupants of the Columbia Avenue house

for lack of standing. "The 'core component'" of the requirement

that a litigant have standing to invoke the authority of a

federal court "is an essential and unchanging part of the case-

or-controversy requirement of Article III." DaimlerChrysler

Corp. v. Cuno, 547 U.S. 332, 342 (2006)(citations omitted). "A

plaintiff must allege personal injury fairly traceable to the

defendant's allegedly unlawful conduct and likely to be redressed

by the requested relief." Allen v. Wright, 468 U.S. 737, 751

(1984). Also, "a plaintiff must demonstrate standing separately

for each form of relief sought." DaimlerChrysler Corp., 547 U.S.

at 352. (citations omitted).

Here, Plaintiff has raised claims on behalf of other

occupants of the Columbia Avenue house. The appropriateness of

third-party standing is determined by a three-part test. Nasir

v. Morgan, 350 F.3d 366, 376 (3d Cir. 2003) (citations omitted). "To successfully assert third-party standing: (1) the plaintiff must suffer injury; (2) the plaintiff and the third party must have a 'close relationship'; and (3) the third party must face some obstacles that prevent it from pursuing its own claims." Id.

In the present case there is no evidence that the other Columbia Avenue house occupants face some obstacle to pursuing their own claims. Hence, Plaintiff does not have standing to raise claims on their behalf. For the above reasons, the Court will grant Defendants' Motion For Summary Judgment on the issue of standing.

### 2. Entry, Detention, Search, and Arrest

Plaintiff alleges that his constitutional rights were violated during the events of July 10, 2008. More particularly, he alleges an unlawful entry, warrantless search, detention by officers with hands on their weapons, demand for identification, and arrest, all without probable cause.

When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. Const. amend. IV. "It is a basic

9

principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable" unless the occupants consent or probable cause and exigent circumstances exist to justify the intrusion."[6] Brigham City v. Stuart, 547 U.S. 398, 403 (2006) (internal quotations omitted). McDonald v. United States, 335 U.S. 451, 456 (1948); United States v. Coles, 437 F.3d 361, 365-66 (3d Cir. 2006). Probable cause exists if the totality of the circumstances create a "fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Bond, 581 F.3d 128, 139 (3d Cir. 2009) (citation omitted). Exigent circumstances occur when: 1) evidence is in imminent danger of destruction, Cupp v. Murphy, 412 U.S. 291 (1973); 2) the safety of the general public or law enforcement is in danger, Warden v. Hayden, 387 U.S. 294 782 (1967); 3) a suspect is likely to flee before a warrant can be obtained, Minnesota v. Olson, 495 U.S. 91 (1990); and 4) the police are in hot pursuit of a suspect, United States v. Santana, 427 U.S. 38 (1976). See also Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006); Estate of Smith v. Marasco, 318 F.3d 497, 518 (3d

---

[6]"[T]he reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." United States v. Knights, 534 U.S. 112, 118-119 (2001) (internal quotation marks and citations omitted).

Cir. 2003). The Court reviews the objective facts reasonably known to the officers at the time of the search considering the totality of the circumstances facing the officers when the search was performed. Illinois v. Gates, 462 U.S. 213, 232 (1983)

**Entry**. The totality of the circumstances facing the officers, and reasonably discoverable information available to them at the time they acted, determines whether there were exigent circumstances. United States v. Rubin, 474 F.2d 262, 268 (3d Cir. 1972). The facts indicate there was probable cause and exigent circumstances justified entry into the house. Defendants were aware that a shooting had occurred, the victim was at the Columbia Avenue house, and there was bloody trail from the sidewalk to the house. In view of Defendants' knowledge that there had been a shooting in the area, and even though the victim had been taken to the hospital, the Court finds that probable cause and exigent circumstances were present to justify entering the house. Defendants had a basis to believe that someone in the premises might be in imminent danger and they were searching for the shooting suspect and weapons. The victim was initially was uncooperative, and Defendants had no reason to believe that the shooting had occurred elsewhere. Having seen the shooting victim, it was logical for Defendants to be concerned that there might be additional victims on the premises. Moreover, the

presence of blood on the front steps gave the police probable
cause to believe that there would be evidence of the crime inside
the premises. United States v. Mitchell, 175 F. App'x 524 (3d
Cir. 2006) (not published) (police were justified, if not
compelled, to enter home after receiving report of shooting and
seeing drops of blood on sidewalk and front steps as they had a
basis to believe that someone in the premises might be in
imminent danger.). See also Illinois v. Gates, 462 U.S. at 238.

**Detention.** It is reasonable for law enforcement officers to
detain individuals who are on premises being searched, see
Michigan v. Summers, 452 U.S. 692, 705 (1981), so officers can
protect themselves during the search, suspects do not flee, and
evidence is not destroyed or hidden. Id. at 702-03. Police
officers are allowed to "routinely exercise unquestioned command
of the situation" by detaining occupants of the premises. Id.
Ultimately, the reasonableness of such a detention depends upon
the balance of the law enforcement interests served versus the
level of intrusiveness imposed. See Leveto v. Lapina, 258 F.3d
156, 167 (3d Cir. 2001).

Plaintiff claims that the occupants of the house were
unlawfully detained. The record reflects that upon entry
Defendants discovered that there were several persons inside the
house. At that point, in order to protect the safety of the

12

officers and occupants of the house, it was logical for
Defendants to secure the individuals in one location while
searching for the shooter, weapon, and/or additional victims.
See Jones v. Philadelphia Police Dep't, 57 F. App'x 939, 941 (3d
Cir. 2003) (not published) (officers did not violate Fourth
Amendment by detaining innocent bystanders during a lawful search
for a reasonable period, under reasonable conditions, to protect
their safety and the safety of officers).  Moreover, given the
fact that the shooter had not been apprehended or identified, it
was reasonable for Defendants to keep their hands on their
weapons.  See Torres v. United States, 200 F.3d 179, 182, 185-86
(3d Cir. 1999) (finding use of drawn guns and handcuffs
reasonable during course of a warranted search estimated to last
from one and one-half to three hours).

        Here, the detention occurred in a private home, it does not
appear that the detention took place over a lengthy period of
time, and the detention served valid law enforcement interests.
Indeed, given the facts, it was reasonable to assume that
detention might reduce the risk of harm to the police officers
and the public and to identify and question the occupants to
determine their knowledge of the shooting.  While the restraint
was unwelcome, it was not unreasonable or unlawful, not only
because of the character of the law enforcement action that was

13

taking place when the restraint was imposed, but also because of several specific facts discussed above which reasonable law enforcement officers would have had in mind.

**Search**. It was reasonable for Defendants to conduct a limited search to determine if there were other injured individuals, if the shooter remained on the premises, and to locate any weapons. See Terry v. Ohio, 392 U.S. 1, 26-27 (1968) (investigative stop based on reasonable, articulable suspicion justifies a protective search for weapons); United States v. Kikumura, 918 F.2d 1084, 1092 (3d Cir. 1990) ("A police officer may search a detained individual for weapons if he has reasonable suspicion that the individual could be armed and dangerous to the officer or others."); cf. Baker v. Monroe Twp., 50 F.3d 1186, 1191 (3d Cir. 1995) ("The dangerousness of chaos is quite pronounced in a drug raid, where the occupants are likely to be armed, where the police are certainly armed, and the nature of the suspected drug operation would involve a great deal of coming and going by drug customers.")

The legitimate concern that there were weapons on the premises permitted a minimal search to ensure the security and safety of the officers. The search was justifiable given the fact that the victim was uncooperative when initially questioned,

14

thus adding to Defendants belief that the shooting occurred on the premises.

**Identification**. Additionally, Defendants did not violate Plaintiff's constitutional rights in asking for his identification. In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment. "[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County, 542 U.S. 177, 185 (2004) (quoting I.N.S. v. Delgado, 466 U.S. 210, 216 (1984); see United States v. Hensley, 469 U.S. 221, 229 (1985) ("[T]he ability to briefly stop [a suspect], ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice"); Hayes v. Florida, 470 U.S. 811, 816 (1985) ("[I]f there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information"); Adams v. Williams, 407 U.S. 143, 146 (1972)("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more

15

information, may be most reasonable in light of the facts known
to the officer at the time"). Defendants did not violate
Plaintiff's constitutional rights in asking for his
identification given the circumstances surrounding the shooting
and the unknown factor of whether the shooter remained on the
premises.

**Arrest.** Plaintiff alleges that he was unlawfully arrested.
He admits, however, that there were outstanding warrants and
capiases for his arrest. To the extent Plaintiff alleges an
unlawful arrest, a reasonable jury could not find that
Plaintiff's Fourth Amendment rights were violated because he was
arrested pursuant to a lawful warrant. "Police officers acting
pursuant to a facially valid warrant generally are deemed to have
probable cause to arrest."[7] Garcia v. County of Bucks, 155 F.
Supp. 2d 259, 265 (E.D. Pa. 2001). Even if the arresting officer
did not have the warrant or capias in her possession at the time
of arrest, the arrest was not unlawful. See United States v.
Leftwich, 461 F.2d 586, 592 (3d Cir. 1972) (arresting officers
need not have had a copy of the warrant in their possession at
time of the arrest). Indeed, it is clearly established that

---

[7]Where a law enforcement officer executes an arrest based on
an objectively reasonable belief that there is a valid warrant,
the officer is generally immune from suit. Berg v. County of
Allegheny, 219 F.3d 261, 272 (3d Cir. 2000).

16

police officers have the right to make an arrest in sole reliance

on a radio report that an arrest warrant is outstanding for the

suspect. Whiteley v. Warden, 401 U.S. 560, 568 (1971) ("We do

not, of course, question that the police were entitled to act on

the strength of the radio bulletin"). Plaintiff's constitutional

rights were not violated at the time of his arrest.

The Court finds that the entry, detention, request for

identification, warrantless search, and arrest were justified by

probable cause and exigent circumstances. Faced with the

circumstances of July 10, 2008, the acts of Defendants did not

violate the Fourth Amendment and a reasonable jury could not find

a violation of Plaintiff's constitutional rights. For the above

reasons, the Court will grant Defendants' Motion For Summary

Judgment.[8]

---

[8]The Court will not address the issue of qualified immunity
inasmuch as it determines that there were no violations of
Plaintiff's constitutional rights. With regard to qualified
immunity, the Court must "decide whether the facts, taken in the
light most favorable to the plaintiff, demonstrate a
constitutional violation" and "whether the constitutional right
in question was clearly established." Couden v. Duffy, 446 F.3d
483, 492 (3d Cir. 2006). Courts are not required to decide the
first prong of this test before moving on to the second prong.
Pearson v. Callahan, 555 U.S. -, 129 S.Ct. 808, 818 (2009). "If
no constitutional right would have been violated were the
allegations established, there is no necessity for further
inquiries concerning qualified immunity." Saucier v. Katz, 533
U.S. 194, 201 (2001). Even were the Court to conclude that the
facts did not support a warrantless entry pursuant to exigent
circumstances, the doctrine of qualified immunity mandates a
ruling in favor of Defendants given the officers' knowledge that

### 3.  Municipal Liability

Plaintiff alleges that it is the common practice of the City of Wilmington police to stop and question without probable cause, to enter houses without a warrant or search warrant, and to refuse to leave upon request.  He alleges this is not the first time that the police have stopped and detained him for no reason, but it is the first time that police "searched the whole house." (D.I. 2, at 11.)  Defendants move for summary judgment on the grounds that Plaintiff has failed to come forward with any evidence sufficient to establish municipal liability under § 1983.

Initially the Court notes that the Wilmington Police Department is a department of the City of Wilmington and cannot be sued as a separate juridical entity.  See Washington v. Wilmington Police Dep't, Civ. No. 92C-05-159, 1995 WL 654158, at *3 (Del. Super. Ct. Sept. 18, 1995).  However, because Plaintiff proceeds pro se, the Court liberally construes the Complaint as brought against the City of Wilmington and notes that the Complaint names Defendant as "the City of Wilmington" Police Department.

_____

a shooting had occurred and the shooter had not been apprehended. The Court finds it would not be clear to a reasonable officer that exigent circumstances justifying a warrantless entry did not exist.

18

Regardless, municipalities cannot be liable under § 1983 for the acts of their agents under a theory of respondeat superior. Monell v. Department of Soc. Servs. of the City of New York, 436 U.S. 658, 691-94 (1978). It is clear from the allegations Plaintiff's claims rest upon that theory. While the Complaint speaks to the municipality in general, the allegations are that police officers enter houses without probable cause, conduct searches without warrants, and refuse to leave houses upon request.

For a municipality to be liable under § 1983, a plaintiff must establish: (1) a deprivation of a constitutionally protected right; (2) resulting from a policy, practice, or custom. Monell, 436 U.S. at 691-94. "Policy is made by an official statement of a 'decisionmaker possessing final authority to establish municipal policy,' and custom can be shown by the presence of a course of conduct that 'is so well-settled and permanent as virtually to constitute law.'" Chernavsky v. Township of Holmdel Police Dep't, 136 F. App'x 507, 509 (3d Cir. 2005) (not published) (quoting Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)) (internal quotations omitted). Plaintiff must "identify the challenged policy, attribute it to the municipality, and show that the execution of the policy caused the injury suffered by the plaintiff." Russoli v. Salisbury

Twp., 126 F. Supp. 2d 821, 830 (E.D. Pa. 2000) (citing Losch v. Borough of Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984).

While Plaintiff alleges, generally, that it is the "common practice" of the Wilmington police to act unconstitutionally on unnamed dates at unnamed locations, his allegations are specifically directed to the single occasion of the July 10, 2008 entry and search of the Columbia Avenue house.[9] Other than the bare allegations in the Complaint, the record contains no evidence of record of an unlawful policy of custom by the City of Wilmington. Nor does the record reflect that Defendants have final policymaking authority. Plaintiff's allegations, without more, are inadequate to establish municipal liability.

For the above reasons, the Court will grant Defendants' Motion For Summary Judgment on the issue of municipal liability.

---

[9]A decision by an official on a single occasion can subject the government to § 1983 liability for an unconstitutional municipal policy only when the municipal official has "final policymaking authority." City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)). Here, there are no allegations that Defendants were policymakers. "[A]n official's failure to adhere strictly to municipal policies does not itself support an inference of a policy that can subject the [municipality] to liability." See Nawrocki v. Township of Coolbaugh, 34 F. App'x 832, 837 (3d Cir. 2002) (not reported) (applying Praprotnik where an officer acted without final policy making authority).

### 4. 42 U.S.C. §§ 1985 and 1986

Plaintiff raises claims pursuant to 42 U.S.C. §§ 1985 and 1986 when an "unknown LT" (presumably Ciotti) failed to stop the prejudice directed towards the occupants of the house, and agreed to back or cover-up the alleged wrongs. Defendants argue that the record contains no evidence to support Plaintiff's conclusory allegations.

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) that the conspiracy is motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. See Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).

The Supreme Court has interpreted § 1985(3) and the second clause of 1985(2) similarly, finding that each contains language "requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." Kush v. Rutledge, 460 U.S. 719, 725 (1983). It is a well settled constitutional interpretation that "intent to deprive of equal protection, or equal privileges and immunities, means that

21

there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Id. at 726.

The Complaint fails to allege any facts from which one could infer an agreement or understanding among Defendants to violate his constitutional rights, or to discriminate against him under § 1985. Also, the Complaint does not specifically speak to the race of Plaintiff (although he refers to the police officers as the "Ku Klux Klan" [sic]. Nor does it refer to a single suspect class. Instead it refers to "abuse of authority" directed to "many blacks and poor whites." Plaintiff has presented no facts to support a finding of conspiracy based upon race. Furthermore, Plaintiff offers no evidence of an animus on the part of Defendants, rather than against Plaintiff as an individual. See Burgos v. Canino, 641 F. Supp. 2d 443, 458 (E.D. Pa. 2009.)

Similarly, Plaintiff's claim pursuant to 42 U.S.C. § 1986 cannot survive the Motion For Summary Judgment. A § 1985 claim is a prerequisite to stating a claim under § 1986.[10] Robison v. Canterbury Vill., Inc., 848 F.2d 424, 431 n.10 (3d Cir. 1988);

---

[10]Section 1986 is a companion to § 1985(3) which "provides the claimant with a cause of action against any person who, knowing that a violation of § 1985 is about to be committed and possessing power to prevent its occurrence, fails to take action to frustrate its execution." Rogin v. Bensalem Twp., 616 F.2d 680, 696 (3d Cir. 1980).

Brawer v. Horowitz, 535 F.2d 830, 841 (3d Cir. 1976).  The § 1986 claims depends upon an underlying violation of § 1985:  "if the claimant does not set forth a cause of action under the latter, its claim under the former must fail also."  Rogin, 616 F.2d at 696.  Plaintiff cannot prevail under his § 1985 claim, and as a result, he also cannot prevail under his § 1986 claim.

Accordingly, the Court will grant Defendants' Motion For Summary Judgment as to the § 1985 and § 1986 claims.

## 5.  Doe Defendants

Defendants move for summary judgment on all claims raised against unidentified John Doe Defendants.  When Plaintiff filed his Complaint he named as Defendants "six unidentified City of Wilmington Police Officers" and an "unidentified detective." (D.I. 2.)  He later identified three Defendants, but to date, the other Defendants have not been identified, and the discovery deadline has passed.

Rule 21 of the Federal Rules of Civil Procedure provides that "parties may be dropped . . . by order of the court . . . of its own initiative at any stage of the action and on such terms as are just."  Fed. R. Civ. P. 21.  The Rule has been used to exclude John Doe parties from an action when appropriate.  See, e.g., Hightower v. Roman, Inc., 190 F. Supp. 2d 740, 754 (D.N.J. 2002); Atlantic Used Auto Parts v. City of Philadelphia, 957 F.

Supp. 622, 625 (E.D. Pa. 1997) ("fictitious party names may be used 'at least until reasonable discovery permits the actual defendants to assume their places . . .', however, . . . '[f]ictitious names must eventually be dismissed, if discovery yields no identities.'" (citations omitted)). Prior to proceeding to trial, it is appropriate to eliminate fictitious defendants under Rule 21.

Plaintiff has failed to identify the remaining Doe Defendants or provide any evidence of their liability for the claims raised in his Complaint. Therefore, the Court will grant Defendants' Motion For Summary Judgment as to the claims against the Doe Defendants.

## III.  REQUEST FOR COUNSEL

Plaintiff requests counsel on the grounds that he has moved several times and been incarcerated several times during the past year, and he is mentally unable to continue to handle his cases. (D.I. 36.) Plaintiff was incarcerated at the time he filed his request, but has since been released. Defendants oppose the Request on the grounds that his case lacks arguable merit in fact and law, and the Request is moot.

Although a plaintiff does not have a constitutional or

statutory right to an attorney,[11] a district court may seek legal
representation by counsel for a plaintiff who demonstrates
"special circumstances indicating the likelihood of substantial
prejudice to [the plaintiff] resulting . . . from [the
plaintiff's] probable inability without such assistance to
present the facts and legal issues to the court in a complex but
arguably meritorious case." Tabron v. Grace, 6 F.3d 147, 154 (3d
Cir. 1993)(citing Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir.
1984)).

Factors to be considered by a court in deciding whether to
request a lawyer to represent an indigent plaintiff include: (1)
the merits of the plaintiff's claim; (2) the plaintiff's ability
to present his or her case considering his or her education,
literacy, experience, and the restraints placed upon him or her
by incarceration; (3) the complexity of the legal issues; (4) the
degree to which factual investigation is required and the
plaintiff's ability to pursue such investigation; (5) the
plaintiff's capacity to retain counsel on his or her own behalf;
and (5) the degree to which the case turns on credibility

---

[11]See Mallard v. United States Dist. Court for the S. Dist.
of Iowa, 490 U.S. 296 (1989) (Section 1915(e)(1) does not
authorize a federal court to require an unwilling attorney to
represent an indigent civil litigant, the operative word in the
statute being "request."; Tabron v. Grace, 6 F.3d 147, 153 (3d
Cir. 1993) (no right to counsel in a civil suit).

determinations or expert testimony. <u>Montgomery v. Pinchak</u>, 294
F.3d 492, 498-99 (3d Cir. 2002); <u>Tabron</u>, 6 F.3d at 155-56.

As discussed above, the case is not meritorious. Also, the
case is so not factually or legally complex that an attorney to
represent Plaintiff is warranted and Plaintiff's filings
demonstrate his ability to articulate his claims and represent
himself. Finally, as discussed above, the Court will grant
Defendants' Motion For Summary Judgment. Thus, in these
circumstances, the Court will deny Plaintiff's Request For
Counsel. (D.I. 36.)

## IV. CONCLUSION

For the above reasons, the Court will grant Defendants'
Motion For Summary Judgment and will deny Plaintiff's Request For
Counsel. (D.I. 33, 36.)

An appropriate Order will be entered.